The trial judge did not err in refusing to grant the defendant a change of venue, either because there was a probability or danger of lynching or other violence, or because an impartial jury could not be obtained in the county where the crime was committed.
 DECIDED JANUARY 10, 1947.
The defendant, N. I. Lucas, was indicted for murder, alleged to have been committed in Twiggs County, Georgia. He presented a petition to the judge of the superior court of the circuit which embraced the county where the alleged crime was alleged to have been committed, asking for a change of venue on the following grounds: That he was in danger of being lynched or some other violence done to him; that a public fund had been solicited and widely contributed to by friends of the State and the prosecution for the purpose *Page 683 
of securing additional counsel to aid the solicitor-general in the prosecution of the charges against him; that he could not obtain a fair and impartial trial by a fair and impartial jury; that inflammatory statements and articles published in the official gazette of said county accused him of being a wife murderer, and that, if he "received a sentence of acquittal or less than death, he would be lynched."
The defendant introduced his sworn petition or motion for a change of venue and then introduced in evidence an article in a newspaper, which was the official organ of the county in which the crime was alleged to have been committed, entitled "Sheriff Tells About Arresting Lucas," and reciting that in the killing of the defendant's wife a rifle was used; that a 22 rifle was recovered from a well on the Lucas place; that it was now in the possession of the sheriff; that a coroner's jury found that the young woman (the wife of the defendant), about twenty-one years old, came to her death by rifle wounds at the hands of her husband, the defendant; that the defendant is being held in the Twiggs County jail in Jeffersonville; and that "Sheriff Hamrick states that this is the worse tragedy that has happened in the county since he took office in 1942."
The defendant introduced a second article in the same paper entitled, "And So, King Alcohol Reigns." This article recites: "The above is the tragic story of some people we have known. What are we going to do about the beer, wine, and liquor drinking that is rampant among our people? A woman said to the writer a few days ago, `There were two drunk women in town yesterday.' Each case above should be a lesson to every thinking individual to mend their ways, straighten up, denounce and avoid the poison that is killing people by the thousands. We are told the increase in drinking is 300 percent more than during prohibition."
Among the stories recited in this article was the following: "A miserable man sits in his cell day after day waiting and wondering what the verdict will be when the jury passes on his case in October. The beast was unleashed in this young man by King Alcohol and he killed his young wife, the mother of two babes, and she was barely in her twenties."
The defendant contends that this story relates to the present case and has reference to him. The State introduced its sworn answer *Page 684 
or traverse denying all of the allegations of the defendant's petition or motion for a change of venue except paragraph one, which alleged that the defendant had been in jail in the county of Twiggs since the day of the alleged commission of the crime charged.
W. E. Hamrick, Sheriff of Twiggs County, in behalf of the State testified in part as follows: "I heard the petition for change of venue read. I do not believe there is any danger of Dock Lucas being lynched by the citizens of this county. I don't believe there has been any danger whatsoever of his being lynched from the time he was incarcerated in jail up to now. Nobody has crowded or gathered around the jail in a body since he has been down there. Mr. Lucas is present in the courtroom today. There has been no effort made in the courtroom to lynch him. No mob has gathered here today. At no time has a mob tried to lynch him as I know of. I believe he can get a fair and impartial trial in this county. I am Sheriff of Twiggs County. I think I am familiar with the people of this county. As to whether I have heard any remarks since this defendant has been incarcerated to lead me to believe that the people have been inflamed against him, not so much. I have heard as much in his favor as against him — I mean statements from people. I have heard statements both ways. I believe he will get a fair and impartial trial if he is tried here. I do not believe he can get any fairer bunch of jurors to try him than is in this county. I have not heard anybody suggest mob violence. I don't know where that came from. Everybody has been mighty nice. People have been to see Dock Lucas, visiting him in the jail; and he has been a good prisoner, and he has been confined to the Twiggs County jail since the night of the 29th of July."
On cross-examination, he testified: "I haven't heard of anyone going around taking up collection for a fund to employ counsel to aid the solicitor-general in the prosecution of the case. I have heard there were some voluntary donations made. I haven't heard any rumors of any mob violence toward Dock Lucas. At the time the controversy arose about where Mrs. Lucas would be buried, there wasn't quite a few men who assembled at my home or came to my home in a rather angry frame of mind toward the defendant. There might have been somebody who came there, but if they came there that angry, I think I would have noticed it. I was never interceded with, as I know of, to remove Dock Lucas from Twiggs *Page 685 
County jail to the Bibb County jail, or elsewhere. I don't remember that I talked with you about it. I can't remember anybody ever telling me that it would be best to remove him from Twiggs County. . . I don't think the newspaper article . . would influence any juror in Twiggs County from giving Dock Lucas a fair trial. In my opinion, knowing the jurors in this county like I do, I do not think that any statements in the paper would operate to the point where Mr. Lucas could not get a fair and impartial trial in this county."
In this case the evidence was not undisputed that a mob was threatening to lynch the defendant, nor were there other circumstances undisputed which showed that concerted action was being taken to do violence to the defendant, nor did the evidence show that an impartial jury could not be obtained in the county where the crime was committed; and upon a consideration of all the evidence, this court can not hold that the trial judge erred in refusing to grant the defendant a change in venue.Johns v. State, 47, Ga. App. 58 (169 S.E. 688); Geer v.State, 54 Ga. App. 216 (187 S.E. 601); Butler v. State,56 Ga. App. 126 (192 S.E. 238); Smith v. State, 62 Ga. App. 498
(8 S.E.2d 797); Code § 27-1201.
Judgment affirmed. Broyles, C. J., and Gardner, J., concur.